Joel W. Baruch  SBN 85903
Corey A. Hall  SBN 295470
LAW OFFICE OF JOEL W. BARUCH, PC
2020 Main Street,  Suite 900
Irvine, California 92614
Telephone (949) 864-9662
Facsimile (949) 851-3185

Attorneys for Plaintiff KAREN SCHATZLE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA- SANTA ANA DIVISION

| | |
|---|---|
| KAREN SCHATZLE,<br><br>              Plaintiff,<br><br>vs.<br><br>ANTHONY RACKAUCKAS, an individual; SUSAN KANG SCHROEDER, an individual; COUNTY OF ORANGE, a public entity; COUNTY OF ORANGE DISTRICT ATTORNEY'S OFFICE, an agency; DOES 1 Through 20, Inclusive<br><br>              Defendants. | CASE NO.<br>*Assigned for All Purposes to:*<br>*Dept.*<br><br>Date Filed:<br>Trial Date:<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, KAREN SCHATZLE, who makes this Complaint for Damages and Demand for Jury Trial as follows:

## JURISDICTIONAL ALLEGATIONS

1.     As to the federal law claims contained in this Complaint, the original jurisdiction of the United States District Court is invoked pursuant to 42 U.S.C. §1331,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1

1  in that these federal claims involve federal questions with amounts in controversy over
2  $75,000.

3      2.    As to the state law claims contained in this Complaint, the supplemental
4  jurisdiction of the United State District Court is invoked pursuant to 28 U.S.C. §1367, in that
5  the state law claims and the federal law claims have common questions of law and fact.

6      3.    Venue of this action in the Central District of California—Santa Ana
7  Division— is sought pursuant to 28 U.S.C. §1391, in that both the state and federal law
8  claims arose in the County of Orange, State of California.

9  **GENERAL ALLEGATIONS**

10      4.    Plaintiff, KAREN SCHATZLE (hereafter SCHATZLE) is, and at all times
11  herein mentioned was, a citizen of the State of California.  At all times herein mentioned,
12  Plaintiff was a deputy district attorney employed by Defendant COUNTY OF ORANGE
13  DISTRICT ATTORNEY'S OFFICE, which is an agency within Co-Defendant COUNTY
14  OF ORANGE.  Further, at all times herein mentioned, Plaintiff was not a "policymaker", not
15  in management, and not in a confidential management position during the course and scope
16  of her employment as a deputy district attorney with said public entity defendants.

17      5.    Defendant, ANTHONY RACKAUCKAS (hereafter RACKAUCKAS) is, and
18  at all times herein mentioned was, a citizen of the State of California.  Further, at all times
19  herein mentioned, Defendant RACKAUCKAS was, and still is, the District Attorney for Co-
20  Defendant COUNTY OF ORANGE DISTRICT ATTORNEY'S OFFICE, an agency within
21  the jurisdiction of Co-Defendant COUNTY OF ORANGE.

22      6.    Defendant, SUSAN KANG SCHROEDER (hereafter SCHROEDER) is, and
23  at all times herein mentioned was, a citizen of the State of California.  Further, at all times
24  herein mentioned, Defendant SCHROEDER was, and still is, the Chief of Staff employed by
25  the COUNTY OF ORANGE DISTRICT ATTORNEY'S OFFICE, an agency within the
26  jurisdiction of Co-Defendant COUNTY OF ORANGE.  The Chief of Staff position was
27  especially created for Defendant SCHROEDER by Co-Defendant RACKAUCKAS, and, in
28  that position, Defendant SCHROEDER is considered to be the #2 employee in the COUNTY

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  OF ORANGE DISTRICT ATTORNEY'S OFFICE.

2       7.    Defendant, COUNTY OF ORANGE (hereafter OC) is, and at all times herein

3  mentioned was, a public governmental entity within the State of California.

4       8.    Defendant, COUNTY OF ORANGE DISTRICT ATTORNEY'S OFFICE

5  (hereafter OCDA) is, and at all times herein mentioned was, a law enforcement agency

6  existing within Co-Defendant OC.

7       9.    Plaintiff is not aware of the true names and/or capacities of those individuals

8  or entities sued herein as DOES 1 through 20, and therefore sues these defendants by their

9  fictitious names.  Plaintiff will amend this complaint when the true names and/or capacities

10  of said DOE defendants are finally ascertained.

11       10.    At all times herein mentioned, Defendant SCHATZLE has been employed as

12  a deputy district attorney with Defendant OCDA, which, as noted, is a law enforcement

13  agency within Defendant OC.  Since in or about November, 1995, Plaintiff SCHATZLE has

14  been employed as a deputy district attorney with defendants OC/ OCDA.  At the present

15  time, she is classified as a Senior Deputy District Attorney/ Turbo IV, which is a non-

16  management position within defendant OCDA.  Plaintiff, who is a licensed attorney with the

17  California State Bar, is an experienced trial lawyer and is qualified for management positions

18  within defendant OCDA.  Throughout her career as a deputy district attorney, she has

19  received outstanding performance reviews.

20       11.    In or about March, 2015, Plaintiff SCHATZLE announced to Defendants

21  RACKAUCKAS and SCHROEDER that she was thinking of running for judicial office

22  against incumbent Judge Scott Steiner in the June, 2016 election for Seat Number 48 of the

23  Orange County Superior Court.  At the time she made this announcement, Plaintiff had just

24  been promoted to the Team Leader position in the OCDA's office with a purported

25  assignment to the North Orange County Superior Court, which was the closest geographic

26  court in Orange County to her Villa Park residence.

27       12.    Prior to Plaintiff's announcement to Defendants RACKAUCKAS and

28  SCHROEDER regarding her thoughts about running for judicial office, the incumbent Judge

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  Scott Steiner for Seat Number 48 had been publicly censured by the California Commission

2  for Judicial Performance on or about September 3, 2014 for engaging in sexual relations with

3  female law students and a practicing attorney in chambers.  Further, Judge Steiner had

4  previously been employed as a deputy district attorney with Defendant OCDA/ OC under the

5  supervision of Co-Defendant RACKAUCKAS.  Further, it was well known that incumbent

6  Judge Steiner's father was Bill Steiner, a former member of the Orange County Board of

7  Supervisors who had considerable political clout.  The actual date of the election for Seat

8  Number 48 was June 7, 2016.

9      13.    Upon being informed by Plaintiff that she was considering running for judicial

10  office against incumbent Judge Steiner in the June, 2016 election, Defendants

11  RACKAUCKAS and SCHROEDER directed Plaintiff to <u>not</u> run for judicial office against

12  incumbent Judge Steiner in the June, 2016 election. Among other things, Plaintiff was told as

13  follows:

14      A)    The OCDA's office, under the leadership of Defendant

15  RACKAUCKAS, had an "unwritten policy" that deputy district attorneys should not run for

16  judicial office against incumbent judges.

17      B)    Plaintiff was also informed that DA RACKAUCKAS and

18  SCHROEDER supported incumbent Judge Steiner in his election bid, and that it would not

19  be "appropriate" and/or "it would not look good" for one of "his" deputy district attorneys to

20  run for judicial office against a candidate that Defendant RACKAUCKAS supported.

21      C)    Plaintiff was also informed that, if she did not run for election against

22  incumbent Judge Steiner as he instructed, the OCDA's office would throw its support behind

23  her if and when she ran for a vacant judicial seat in the Orange County Superior Court.

24      D)    Plaintiff was also informed that, if she did ignore their direction to not

25  run against incumbent Judge Steiner, her career in the OCDA's office would be "destroyed".

26  Plaintiff was not specifically told what "career being destroyed" meant, but she is

27  experiencing it since she lost the judicial election in June, 2016.

28      14.    On or about March 9, 2016, Plaintiff SCHATZLE officially and publicly

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

4

1 announced her candidacy against incumbent Superior Court Judge Scott Steiner for Seat No.
2 48 of the Orange County Superior Court.

3      15.     The local bar association— Orange County Bar Association— rated Plaintiff
4 SCHATZLE as "qualified", whereas incumbent Judge Steiner received an "unqualified"
5 rating from the same organization.

6      16.     On or about April 26, 2016, having already publically announced her
7 candidacy, Plaintiff SCHATZLE posted a truthful public comment on the North Orange
8 County Bar Association Facebook Page as follows: "Scott Steiner uses his office for sex and
9 yet many aren't concerned, crazy politics."

10      17.     On or about the same date of April 26, 2016, Jeff Ferguson, a former employee
11 of Defendants OC/ OCDA, and then an Orange County Superior Court judge, posted
12 back on the same Facebook page of the North Orange County Bar Association as follows:
13 "Karen Shatzle (sic) has sex with defense lawyer whike (sic) shw (sic) is a DA on his cases
14 and nobody cares...interesting politics". This comment was a knowingly false statement of
15 fact by Judge Jeff Ferguson, or was recklessly posted by him without knowing, or caring to
16 know, the true facts. The true facts were that Plaintiff SCHATZLE had never engaged in any
17 type of sexual relations with a criminal defense lawyer while she was prosecuting cases
18 against his client(s). Although Judge Ferguson took down this post later, the damage was
19 done to Plaintiff SCHATZLE, and the comment itself has been republished on numerous
20 occasions since that time. The California Commission on Judicial Performance in fact
21 publicly admonished Judge Ferguson for making this public comment about Plaintiff
22 SCHATZLE on or about May 31, 2017.

23      18.     Contemporaneous with the filing of this action in the United States District
24 Court, Plaintiff SCHATZLE will file a separate action in the Superior Court of the State of
25 California against Judge Jeff Ferguson for the aforesaid defamatory comment(s) while acting
26 in an individual outside the course and scope of his employment.

27      19.     On or about May 24, 2016, the Orange County Register published an article
28 shortly before the election with this headline: "Prosecutor: My Run Against Judge Scott

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

5

1   Steiner Has Been Career Suicide". Plaintiff was interviewed for this article. Among other

2   things, she told the Register reporter that she had already been "disciplined" by

3   disadvantageous re-assignments and failure to promote her to available management

4   positions for which she was qualified. She also told the Register reporter about the aforesaid

5   "unwritten policy" of the OCDA office under the leadership of District Attorney

6   Rackauckas— i.e. that his deputy district attorneys should not run for judicial office against

7   incumbent judges in general and incumbent Judge Steiner, in particular.

8          20.     At the time of the aforesaid Register article in the previous paragraph,

9   Defendants RACKAUCKAS and SCHROEDER had already publicly supported incumbent

10  Judge Steiner's candidacy. In a recorded statement to incumbent Judge Steiner's campaign

11  website, Defendant RACKAUCKAS was quoted as follows: "There is no debate that he was

12  a great prosecutor and that he has a superior intellect and work ethic as a judge...I accept his

13  apology for his failings on the bench and believe he deserves a second chance."

14         21.     On June 6, 2016, one day before the election, the Los Angeles Daily Journal

15  published an article with this headline: "OC Prosecutor Challenges Judge Sanctioned For

16  Sex". Plaintiff was interviewed for this article. Appearing in the article were these

17  comments about her:

18         A)      "Schatzle feels she already has a backup if she loses to Superior Court

19  Judge Steiner on Tuesday. She's worked in the Orange County district attorney's office

20  since 1995, for the last 10 years as a senior deputy district attorney. But she also fears

21  retaliation for challenging the only sitting judge up for reelection in Orange County this year,

22  and her campaign, recently sparked a terse response from her boss, District Attorney J.

23  Rackauckas."

24         B)      "Responding to claims by Schatzle that her supervisors blocked a

25  promotion plan for her after they learned that she was challenging Steiner, Rackauckas

26  reiterated his endorsement of Steiner and said he accepts Steiner's apology and believes he

27  deserves a second chance for his failings on the bench."

28         C)      "Rackauckas also said Schatzle was mischaracterizing what happened

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

6

during her employment". The article then took this direct statement from DA Rackauckas: "I was disappointed that one of my prosecutors running to be judge would make a false statement about her employment status...this confirms that I made the right choice of joining judges, elected officials, law enforcement officers and their victims in supporting Judge Steiner." In other words, Defendant RACKAUCKAS called Plaintiff a "liar" when she discussed with the press she had committed "career suicide".

          D)    "Schatzle also said that colleagues in the district attorney's office and others in the county have told her they can't publicly support her because they fear retaliation."

22.    On June 7, 2016, Plaintiff SCHATZLE lost her election bid for Orange County Superior Court Judge Seat No. 48. Judge Steiner won the election.

23.    In January, 2017, newly-elected Judge Steiner made a campaign contribution of $500 to Defendant RACKAUCKAS for his re-election bid for District Attorney of Orange County in June, 2018. Plaintiff contends this campaign contribution was *quid pro quo* for Defendant RACKAUCKAS public support and disparagement of Plaintiff in his judicial election against one of "his" deputy district attorneys.

24.    Between June 7, 2016, and December 5, 2016, Plaintiff SCHATZLE went back to work in her former position.

25.    Between December 6, 2016 and June 11, 2017, Plaintiff SCHATZLE was taken off work by her physician for a disability.

26.    Upon returning from disability leave, on or about June 15, 2017, Plaintiff SCHATZLE applied to be promoted to an available Assistant Head of Court position. The Assistant Head of Court position was one step above her current Team Leader position and, further, in order to be promoted to a Head of Court position in the OCDA's office, qualified candidates had to first work in the Assistant Head of Court position. If she were to be promoted to an Assistant Head of Court position in the OCDA's office, the position carried with it greater job responsibility, however, it would not involve a raise in pay. Nevertheless, as indicated, Plaintiff was required by OCDA office policy to first become an Assistant Head

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1 of Court before being promoted to the Head of Court position, which position was
2 considered to be management (Level V) and which would have involved a substantial pay
3 increase and increase in retirement benefits.  In other words, according to official OCDA
4 promotional policies, the person promoted to Head of Court had to first work in the capacity
5 of an Assistant Head of Court; and, further, the person promoted to an Assistant Head of
6 Court position had to first work in the Team Leader position.

7      27.    At all times herein mentioned, Plaintiff was eminently qualified to assume the
8 Assistant Head of Court position and, if successful, then the Head of Court management
9 position.  Plaintiff did not receive the requested promotion to the Assistant Head of Court
10 position, even thought she was at least as qualified, and in some cases more qualified, with
11 respect to seniority, knowledge, and skills than those other deputy district attorneys who
12 applied for the same position.  In fact, the deputy district attorney who received an Assistant
13 Head of Court position instead of Plaintiff was promoted to that position without first having
14 been a Team Leader.  At the time, the Assistant Head of Court position required some prior
15 tenure as Team Leader, a position which Plaintiff had been working with excellent
16 performance reviews since in or about March, 2015.

17      28.    Plaintiff SCHATZLE will continue to apply for promotional opportunities
18 within the OCDA's office in September, 2017 and during the pendency of this litigation.
19 Defendant RACKAUCKAS, over the years as the District Attorney, has a well-deserved
20 pattern and reputation of using his office to "help his friends" and to "damage or destroy his
21 enemies".

22      29.    Instead of being promoted, Plaintiff remains in her Team Leader position and
23 has in fact been assigned relatively trivial work in the OCDA's office well below her pay
24 grade, thus marginalizing and isolating her from her peers.  Further, during the same period
25 of time, she has applied for lateral transfer positions in which she can use her superior
26 knowledge, training, and skills as a deputy district attorney in trial work and in law and
27 motion work; however, she has been denied those transfers as well.

28      30.    In the OCDA's office, the promotional opportunities occur on a regular basis.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

8

1   These opportunities generally arise on a quarterly basis when deputy district attorneys put in

2   for rotation assignments by submitting what is known as a "dream sheet"; however,

3   promotions can also occur whenever there is a need to fill particular supervisory positions,

4   but, as noted, typically occur just before rotations.  As noted, Plaintiff SCHATZLE put in a

5   request for promotion to the management Assistant Head of Court position in or about June,

6   2017 when she returned from disability leave.  She will continue to do put her name in for

7   promotion every three months according to the promotional policies of the OCDA's office.

8

9                          **FIRST CAUSE OF ACTION**

10                  **(Violation of Federal Civil Rights Under First And Fourteenth**

11                  **Amendments to United States Constitution— 42 U.S.C. 1983,**

12                  **Et Seq.— Brought By Plaintiff Against Defendants RACKAUCKAS,**

13                  **SCHROEDER, and DOES 1 Through 20, Inclusive)**

14          31.     Plaintiff realleges and incorporates herein those matters contained in

15   paragraphs 1 through 30 as though fully set forth.

16          32.     This cause of action arises under Plaintiff SCHATZLE's rights as a citizen

17   under the First and Fourteenth Amendments to the United States Constitution.  As to the First

18   Amendment, Plaintiff had a right to exercise free speech and/or association by running and

19   campaigning for political/ judicial office against incumbent Judge Scott Steiner for the

20   vacant Seat Number 48 of the Orange County Superior Court.  As to the Fourteenth

21   Amendment, any such rights of free speech and/or association she enjoyed as a citizen under

22   the First Amendment could not be abridged by her public entity employers without providing

23   Plaintiff with due process of law.  In connection with this particular cause of action arising

24   under the First and Fourteenth Amendments to the United States Constitution, Plaintiff sues

25   individual Defendants RACKAUCKAS and SCHROEDER and does not sue the public

26   entity defendants— Defendants OC and OCDA.  Instead, Defendants OC and OCDA are

27   sued in the Second Cause of Action for the aforesaid "unwritten" policy and practice of the

28   OCDA's office in not permitting deputy district attorneys from running for political/ judicial

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  office (i.e. *Monell* violations).

2       33.    From the time that Plaintiff SCHATZLE first broached her interest in running

3  against incumbent Judge Steiner to Defendants RACKAUCKAS and SCHROEDER until the

4  present date, as set forth in the General Allegations incorporated herein, Plaintiff

5  SCHATZLE was acting as "citizen" and not pursuant to her official duties as a deputy

6  district attorney. As further noted in the facts incorporated into this cause of action, Plaintiff

7  was not a policymaker nor manager nor confidential employee within the OCDA.

8       34.    In addition to addressing Plaintiff's protected free speech and/or association

9  rights by running and campaigning for political/ judicial office, this cause of action also

10  addresses any public comments made by, or attributed to, Plaintiff SCHATZLE by the press

11  or media, regarding her candidacy for political/ judicial office against incumbent Judge Scott

12  Steiner. During her campaign for political/ judicial office, Plaintiff SCHATZLE was

13  interviewed by the Orange County <u>Register</u> newspaper on or about May 24, 2016 and was

14  further interviewed by the <u>Los Angeles Daily Journal</u> on June 6, 2016, one day before the

15  election. In both instances, public statements were attributed to Plaintiff and, also, were

16  attributed to Defendant RACKAUCKAS. Plaintiff asserts that her public statements to the

17  press on both occasions were protected under the First and Fourteenth Amendments.

18  Plaintiff also asserts that the public statements attributed to Defendant RACKAUCKAS on

19  one or both instances were reflective of his retaliatory intent against Plaintiff because she ran

20  for political/ judicial office and because she gave statements to the press during her campaign

21  for political/ judicial office.

22       35.    At all times herein mentioned, Plaintiff's candidacy for political/ judicial office

23  and her public statements during the campaign for political/ judicial office, were matters of

24  public concern.

25       36.    Since she lost the judicial election to incumbent Judge Steiner on June 7, 2016,

26  Plaintiff has been subjected to job retaliation by Defendants RACKAUCKAS and

27  SCHROEDER. The facts contained in the General Allegations section of this Complaint

28  have been incorporated into this cause of action. Together, these facts demonstrate that

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  Plaintiff has been retaliated against by said individual Defendants named in this cause of
2  action, particularly with respect to a failure to promote to positions for which she was and is
3  qualified, continuing job assignments in the Team Leader position which are well beneath
4  her qualifications, experience, knowledge, skills and training, not being permitted to transfer
5  out of the Team Leader position into other available positions in the OCDA's office that
6  would be more suitable for her skills and qualifications, and ostracism and isolation by her
7  peers and management in the OCDA's office.  These retaliatory job actions are continuing up
8  to the present date and it is further suspected that these will continue during the pendency of
9  this action, and may even result in further retaliation up to and including discharge from her
10  employment.

11       37.    At all times herein mentioned, based on the above facts, the substantial
12  motivation of Defendants RACKAUCKAS and SCHROEDER in retaliating against Plaintiff
13  was because of exercising her right of protected speech and association by running and
14  campaigning for political/ judicial office against incumbent Judge Steiner; and, further,
15  because of her campaigning for political/ judicial office by giving protected interviews about
16  her campaign and her employment status in the OCDA's office.

17       38.    As a direct result of the job retaliation Plaintiff has experienced because she
18  ran for political/ judicial office against incumbent Judge Steiner, and because she gave press
19  interviews as a result of her campaign for political/ judicial office, Plaintiff has sustained
20  compensatory damages in amount according to proof at the trial of this action.

21       39.    Plaintiff also prays for the recovery of attorney's fees and expenses pursuant to
22  the provisions of 42 U.S.C. Sections 1983, et seq.

23       40.    Plaintiff also prays for the recovery of punitive damages against Defendant
24  RACKAUCKAS for his intentional job retaliation against Plaintiff.  In so doing, he has
25  exhibited malice, oppression, fraud and despicable condition. Facts which support Plaintiff's
26  claim for punitive damages in this action include, but are not limited, to each of the
27  following:

28       A)    Defendant RACKAUCKAS, a former judge, was first elected to the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   position of District Attorney for County of Orange in June, 1998, winning 59% of the vote
2   against former OCDA prosecutor Wally Wade.  In March, 2002, he successfully ran for re-
3   election against former OCDA prosecutor Wally Wade again, winning 62% of the vote. In
4   June, 2006, he ran for re-election and was unopposed, thus winning 100% of the vote.  In
5   June 2010, he ran for re-election and was unopposed again, thus winning 100% of the vote.
6   In June, 2014, he successfully ran for re-election, winning about 73% of the vote.  Said
7   Defendant has announced he is running for re-election for the June, 2018 election.

8           B)      Throughout his career as the District Attorney for Orange County,
9   Defendant RACKAUCKAS has engaged in a unlawful pattern and practice of squelching
10  dissent and free speech among his employees, including deputy district attorneys and law
11  enforcement district attorney investigators.  (See *infra*).

12          C)      Throughout his career as the District Attorney for Orange County,
13  Defendant RACKAUCKAS has engaged in an unlawful pattern and practice of exercising
14  job retaliation against his employees who have had the temerity to bring unlawful practices in
15  the OCDA's office to public attention (i.e. perceived or actual "whistleblowers").  (See
16  *infra*).

17          D)      Recently, three District Attorney investigators of the OCDA's have filed
18  complaints regarding the retaliation that they have each experienced as a result of exercising
19  their First Amendment rights to free speech and association.

20
21                          **SECOND CAUSE OF ACTION**
22                  **(Violation of Federal Civil Rights Under First And Fourteenth**
23                  **Amendments to the United States Constitution— 42 U.S. C.**
24                  **1983, Et Seq— Brought By Plaintiff Against Defendants OC**
25                  **And OCDA (*Monell* Violation)**

26          41.     Plaintiff realleges and incorporates herein those matters contained in
27  paragraphs 1 through 37 as though fully set forth.
28          42.     Pursuant to 42 U.S.C. Sections 1983, et seq., public entity defendants, such as

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

12

1  Defendants OC and OCDA, are "persons" that can be held liable for infringement of the

2  plaintiff's constitutional rights that are the direct result of their public employer's official

3  policy.  The Court held that this liability only existed when the constitutional infringement

4  was the direct result of an official policy.

5        43.     This cause of action arises under Plaintiff SCHATZLE's rights as a citizen

6  under the First and Fourteenth Amendments to the United States Constitution.  As to the First

7  Amendment, Plaintiff had a right to exercise free speech and/or association by running and

8  campaigning for political/ judicial office against incumbent Judge Scott Steiner for the

9  vacant Seat Number 48 of the Orange County Superior Court.  As to the Fourteenth

10  Amendment, any such rights of free speech and/or association she enjoyed as a citizen under

11  the First Amendment could not be abridged by her public entity employers without providing

12  Plaintiff with due process of law.  In connection with this particular cause of action arising

13  under the First and Fourteenth Amendments to the United States Constitution, Plaintiff sues

14  public entity defendants— OC and OCDA— for the expressed adoption of an official and

15  unlawful "unwritten policy" that deputy district attorneys employed by the OCDA who are

16  running for judicial election against an incumbent judge in the Orange County Superior

17  Court will be subjected to retaliation for doing so.

18        44.     Based on the facts incorporated into this cause of action, Defendants OC/

19  OCDA had, and continue to have, adopted an official "unwritten policy" which Plaintiff

20  SCHATZLE allegedly violated when she ran for political/ judicial office against incumbent

21  Judge Steiner.

22        45.     Said public entity Defendants named in this cause of action retaliated against

23  Plaintiff SCHATZLE in her employment as a deputy district attorney after she announced her

24  candidacy for the vacant judicial seat against incumbent Judge Steiner in the Orange County

25  Superior Court.  Plaintiff was expressly told by Co-Defendants RACKAUCKAS and

26  SCHROEDER that, if she defied their orders and ran against incumbent Judge Steiner in the

27  2016 judicial election, her career in the OCDA's office would be "destroyed".

28        46.     Before and since losing the 2016 judicial election against incumbent Judge

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  Steiner, Plaintiff SCHATZLE has in fact been subjected to job retaliation of the kind and
2  nature set forth in the facts incorporated into this cause of action.

3      47.    As a direct result of the job retaliation Plaintiff has experienced because she
4  ran for political/ judicial office against incumbent Judge Steiner, Plaintiff has sustained, and
5  will continue to sustain for a period of time in the future, compensatory damages in amount
6  according to proof at the trial of this action.  A substantial motivating factor to retaliate
7  against Plaintiff, as aforesaid, was her "violation" of the OCDA's official "unwritten policy"
8  by running and campaigning for political/ judicial office against incumbent Judge Steiner. As
9  noted, Defendants OC and OCDA retaliated against her, and continues to retaliate against
10  her, in the terms and conditions of her employment as a deputy district attorney.

11      48.    Plaintiff also prays for the recovery of attorney's fees and expenses pursuant to
12  the provisions of 42 U.S.C. Sections 1983, et seq.

13

14              **THIRD CAUSE OF ACTION**

15          **(Job Retaliation For Running For Public Office— Violations of**
16          ***California Labor Code* Sections 1101, 1002, 1105— Brought By**
17          **Plaintiff Against Defendants OC, OCDA, And DOES 1**
18          **Through 20)**

19      49.    Plaintiff realleges and incorporates herein those matters contained in
20  paragraphs 1 through 30 of the General Allegations, paragraphs 32 through 37 of the First
21  Cause of Action, and paragraphs 43 through 46 of the Second Cause of Action, as though
22  fully set forth.

23      50.    At all times herein mentioned, *Labor Code* §§1101(a), 1101(b), 1102, and 1105
24  and its various subdivisions were in full force and effect.

25          A)    Pursuant to *Labor Code* §1101(a), "no employer shall make, adopt, or
26  enforce any rule or regulation or policy forbidding or preventing employees from engaging or
27  participating in politics or from becoming candidates for public office."

28          B)    Pursuant to *Labor Code* §1101(b), "no employer shall make, adopt, or

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

14

1  enforce any rule or regulation, or policy controlling or directing, or tending to control or

2  direct the political activities or affiliations of employees."

3      C)      Pursuant to *Labor Code* §1102, "no employer shall coerce or influence

4  or attempt to coerce or influence his employees through or by means of threat of discharge or

5  loss of employment to adopt or follow or refrain from adopting or following any particular

6  course or line of political action or political activity."

7      D)      Pursuant to *Labor Code* §1103, "an employer or any other person or

8  entity that violates this chapter is guilty of a misdemeanor punishable, in the case of an

9  individual, by imprisonment in the county jail not to exceed one year or a fine not to exceed

10  one thousand dollars ($1,000) or both that fine and imprisonment, or, in the case of a

11  corporation, by a fine not to exceed five thousand dollars ($5,000)."  Although this particular

12  section of the *Labor Code* does not in and of itself create a private right of civil action,

13  nevertheless it demonstrates that the other relevant provisions of the same chapter are part of

14  the public policy of the State of California.

15      E)      Pursuant to *Labor Code* §1105, "nothing in this chapter shall prevent the

16  injured employee from recovering damages from his employer for injury suffered through a

17  violation of this chapter".

18      51.      By adopting an official "unwritten" policy that deputy district attorneys

19  employed by the OCDA could not run for political/ judicial office against an incumbent

20  superior court judge, as was told to Plaintiff by policymaking representatives of the public

21  entity defendants named herein, said public entity defendants broke the law of the State of

22  California as set forth in *Labor Code* §§1101(a), 1101(b) and 1102— i.e., by either adopting,

23  making, and enforcing a rule or policy that would prevent an employee from participating in

24  politics, from becoming candidates for public office, and/or directing the political activities

25  or affiliations of those employees.

26      52.      Pursuant to the facts incorporated from the General Allegations, the First Cause

27  of Action, and the Second Cause of Action contained herein, Plaintiff was subjected to

28  unlawful retaliation, and continues to be subjected to unlawful retaliation, all of which has

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

15

adversely affected the terms and conditions of her employment as a deputy district attorney.

53.     On August 7, 2017, Plaintiff SCHATZLE filed a government tort claim against Defendants OC/ OCDA.  A true and correct copy of this government tort claim is attached hereto as **Exhibit A**.

54.     On August 15, 2017, Gary Stopforth, the Liability Claims Manager of Defendants OC/ OCDA sent a letter to Plaintiff's counsel, denying Plaintiff's government tort claim as being untimely— i.e. not being presented within six months of the accrual of the cause of action pursuant to *Government Code* §§901 and 911.2.  Further, the denial of claim by Mr. Stopforth indicated that it was too late for Plaintiff to file for leave to present a late claim because the incident noted in Plaintiff's claim occurred more than one year after the accrual of the cause of action pursuant to *Government Code* §911.4.  A true and correct copy of this denial of claim is attached hereto as **Exhibit B**.

55.     Plaintiff disagrees with the analysis of Mr. Stopforth as set forth in the above-noted denial of claim.  The accrual of the cause of action did not occur until Plaintiff returned from a six-month disability leave and applied for promotion to a management Assistant Head of Court position in or about June, 2017 as noted in Plaintiff's claim. At page 5 of Plaintiff's government tort claim, the following was noted in the government tort claim:

> "Since she returned from disability leave on or about June 11, 2017, she has been denied promotions and/or transfers to the HEAT unit and to the Assistant Head of Court position.  For these promotional opportunities that Ms. Schatzle sought, she was at least as qualified, and, in some cases, more qualified than the persons who received them...."

Further, at page 6 of the subject government tort claim, when specifying the "adverse actions addressed in this claim", Plaintiff's claim form stated as follows:

> "Karen Schatzle has suffered, and continues to suffer, adverse employment actions which affect her future

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1                              employment and promotional opportunities.  All of the

2                              adverse employment actions addressed in this claim

3                              occurred after she disregarded the threats and warnings

4                              to her career if she ran for judicial office against

5                              incumbent Scott Steiner.  To date, the adverse employment

6                              actions addressed in this claim are decisions up to the

7                              present date to not promote her to better-paying management

8                              positions for which she has superior qualifications and

9                              motivation to perform.  She is currently performing in

10                             positions for which she is under-qualified without any

11                             good cause..."

12      56.    As a direct result of the aforesaid violations of law, as well as the job

13  retaliation set forth herein, Plaintiff has sustained, and will continue to sustain for a period of

14  time in the future, compensatory and general damages in an amount according to proof at the

15  trial of this action.

16      57.    Because this claim arising under California state law is a matter of public

17  concern, and affects the public at large, Plaintiff prays for attorney's fees and expenses

18  pursuant to the private attorney general doctrine of *Code of Civil Procedure* §1021.5.

19

20      WHEREFORE, Plaintiff prays for the following relief:

21      <u>On the First And Second Causes of Action:</u>

22      1.    For compensatory damages in an amount according to proof.

23      2.    For attorney's fees and expenses pursuant to 42 U.S.C. Sections 1983, et seq.

24      3.    As to the First Cause of Action only, for punitive damages against Defendant

25  RACKAUCKAS.

26      <u>On the Third Cause of Action:</u>

27      1.    For compensatory and general damages according to proof.

28      2.    For attorney's fees and expenses under the Private Attorney General Doctrine

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  of *Code of Civil Procedure* §1021.5.

3      On All Causes of Action:

4      1.      For any prejudgment interest where allowed in an amount according to proof.

5      2.      For costs of the suit herein incurred.

6      3.      For such other and further relief as this court may deem proper and just.

8  Dated:    September 14, 2017

10                                          LAW OFFICES OF JOEL W. BARUCH, PC

13                              By _____

14                                  Joel W. Baruch, Attorney for Plaintiff

17                              **DEMAND FOR JURY TRIAL**

18      1.      Plaintiff herein demands a trial by jury.

20  Dated:    September 14, 2017

22                                          LAW OFFICES OF JOEL W. BARUCH, PC

25                              By _____

26                                  Joel W. Baruch, Attorney for Plaintiff

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**